UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  09-22770-CIV-LENARD/TURNOFF

GLOBAL TRADING & BEVERAGE,
INC., a Florida corporation,

    Plaintiff,

v.

VINCENT & SONS ENTERPRISES,
INC., a Florida corporation, and
STANLEY VINCENT, individually,

    Defendants.
_____/

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [D.E. 13]

Plaintiff has demonstrated that it is entitled to a preliminary injunction. In their opposition, Defendants failed to raise any doubt as to Plaintiff's likelihood of success on the merits. Furthermore, Defendants' arguments that this Court lacks subject matter jurisdiction and Plaintiff lacks standing are unpersuasive and unsupported by the law. Therefore, this Court should grant Plaintiff's motion and issue the requested preliminary injunction.

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S LANHAM ACT CLAIMS

Defendants argue that the Lanham Act cannot apply to the Defendants' infringing activity because some of this activity occurred in Haiti. This argument lacks support both in fact and law. The facts show that the vast majority of the infringing activity occurred here in the U.S. Furthermore, since the Lanham Act broadly reaches all commerce within the control of Congress, not just commerce that occurs on U.S. soil, this court has subject matter jurisdiction over this dispute.

A federal court may "dismiss a federal question claim for lack of subject matter

jurisdiction only if (1) the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction; or (2) such a claim is wholly insubstantial and frivolous." *TNT USA Inc. v. TrafiExpress, S.A. de C.V.*, 434 F. Supp. 2d 1322, 1328 (S.D. Fla. 2006), *quoting Blue Cross & Blue Shield of Alabama v. Sanders,* 138 F.3d 1347, 1352 (11th Cir. 1998).  Neither is the case here.  The plaintiff's claim was not made for jurisdictional purposes, nor is it wholly insubstantial or frivolous, and the defendants do not argue otherwise. [1]

The facts of this case are remarkably similar to those of the seminal United States Supreme Court case on extraterritorial application of the Lanham Act, *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952).  In that case, the Supreme Court held that district courts have jurisdiction to award relief concerning acts of trademark infringement and unfair competition even though those acts take place entirely in a foreign country.  In *Steele* the defendant, a U.S. citizen, went to Mexico, imported watch parts and cases from Switzerland and the U.S., stamped the watches "Bulova," and then sold them in Mexico. *Id.* Plaintiff's sales representatives in Texas received complaints from their customers about Defendant's infringing "Bulova" watches. *Id.*  Bulova sued and the district court dismissed for lack of subject matter jurisdiction.  The circuit court reversed and on appeal to the Supreme Court the Court affirmed and held that the broad jurisdictional grant in the Lanham Act's scope encompasses the defendant's activities, even though those activities took place outside the United States, because defendant's operations and the resulting effects of the operations were not confined within Mexico since he bought watch parts in the United States, and because his competing goods "could well effect adversely

---

[1] Notably, in response to Plaintiff's Motion for Preliminary Injunction and in their Motion for Judgment on the Pleadings [DE 14], Defendants argue that the Court lacks subject matter jurisdiction, however Defendants' never challenged this court's subject matter jurisdiction by way of a Fed. R. Civ. Pro. 12(b)(1) motion in response to Plaintiff's Amended Complaint.

on [Plaintiff's] trade reputation in market's cultivated by advertising here as well as abroad." *Id*. at 286.

Following *Steele,* the Eleventh Circuit has enunciated a test to determine whether subject matter jurisdiction exists when the Lanham Act is asserted to cover infringement overseas. There is jurisdiction when 1) Defendant is a United States corporation; 2) the foreign activity has substantial effects in the United States; and 3) exercising jurisdiction would not interfere with sovereignty of another nation. *International Café, S.A.L. v. Hard Rock Café International USA, Inc.*, 252 F. 3d 1274, 1278 (11th Cir. 2001). In fact in a number of cases the Eleventh Circuit has approved of the exercise of jurisdiction under the Lanham Act over extraterritorial activities of defendants. *See Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir. 1994) and *Levi Strauss v. Sunrise Intern. Trading Co.*, 51 F.3d 982 (11th Cir. 1995).

In *Babbit*, the defendant, a U.S. corporation, negotiated the sale of cordless phones from a Florida office and then sold the telephones outside the United States. In *Levi Strauss,* the defendant, an exporter, shipped counterfeit jeans through the United States on their way to Europe. In both cases the Lanham Act was found to support subject matter jurisdiction over activities that were otherwise extraterritorial in nature since, as the Court of Appeals noted, "the Lanham Act imposes upon this court the duty to protect the entire gamut of purchasers, including non-English speaking purchasers, in various countries throughout the world to which the defendants intend to export their products." *Babbit,* 38 F.3d at 1180, *quoting Reebok Intl. v. American Sales Corp.*, 11 U.S.P.Q.2d 1229, 1231 (E.D. Wash. 1989). *See also*, *TNT USA Inc.,* 434 F. Supp. 2d 1322 (jurisdiction exercised where plaintiff's trade reputation was affected in the United States where use of trademark alleged to have extended beyond Mexican infringer's borders); *Air Turbine Technology, Inc. v. Atlas Copco AB*, 295 F.Supp.2d 1334 (S.D. Fla. 2003) (jurisdiction existed over Lanham Act claim where defendant engaged in interstate commerce,

3

directed European advertisements to the U.S. and caused U.S. plaintiff substantial damages.)

The facts of the instant case however are distinguishable from the facts of *International Café* and *Vanity Fair Mills, Inc. v. T. Eaton Company Limited*, 234 F. 2d 633 (2d Cir. 1956) cited by plaintiff. In *International Café* Lanham Act jurisdiction was wanting because two of the three required elements were not met. First, there was a lack of substantial effect in the United States where the only fact alleged was financial gain by the defendant, a U.S. parent company, in the form of royalties from sales earned in Lebanon from its Lebanese subsidiary. *International Café*, 252 F. 3d at 1278. Second, there was already a pending trademark civil suit in Lebanon which had the possibility producing an inconsistent ruling from any United States ruling. *Id.* at 1279. Similarly, in *Vanity Fair* the defendant had a Canadian trademark registration under Canadian trademark law. *Vanity Fair,* 234 F. 2d at 646.

Unlike the facts in *International Café* and *Vanity Fair*, here jurisdiction is proper because 1) the defendants are a US corporation and a U.S. resident, 2) the defendants' foreign activity has substantial continuing effects on the plaintiff here in the U.S., and 3) exercising jurisdiction will not interfere with Haiti's sovereignty because there is no pending matter there concerning the trademarks at issue. Plaintiff has sufficiently demonstrated all three required elements, including that there was (and continues to be) a substantial effect. The Defendant misstates the holding of *International Café* which, contrary to what Defendants' arguments, did not limit the substantial effects test to instances where counterfeit or otherwise illegal products infiltrate the United States market. Instead, *International Café* recognized that in addition to the counterfeit goods coming into the United States, "Defendant's competing goods could well effect adversely on [Plaintiff's] trade reputation in markets cultivated by advertising here as well as abroad." *International Café*, 252 F.3d at 1278.

Plaintiff's allegations satisfy the test in *International Café*. Plaintiff's Amended

4

Complaint alleges:

> ¶ 29: Global began to receive reports of dissatisfied customers who had purchased the new hot sauce and found it to be unacceptable for the Haitian palate. Retailers who had purchased the new hot sauce complained to Global and its exclusive agents in Haiti about the inferior quality of the new hot sauce.
>
> ¶ 30: [R]etailers have been forced to liquidate stock…and have naturally looked to Global to resolve the solution.
>
> ¶ 46: The Defendants' acts have caused actual confusion or deception among members of the purchasing public who perspective purchasers of The Original Louisiana Hot Sauce™ specially formulated for the Haitian market bearing the one drop does it registered mark.

*See* Amended Complaint [D.E. 3].

Like in *Steele*, Plaintiff here has demonstrated that Defendants' competing goods are reflecting adversely on Plaintiff's business, good will and reputation in the United States and is causing confusion and dissatisfaction. Moreover, Plaintiff has suffered financial damages and an impaired exporting business in the United States as a result of the Defendants' actions. These facts permit this court to exercise jurisdiction over plaintiff's Lanham Act claims.

## II. PLAINTIFF HAS STANDING TO MAINTAIN ITS LANHAM ACT CLAIM FOR REGISTERED TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114

Defendants argue Plaintiff has no standing to bring a claim under §32 of the Lanham Act, 15 U.S.C. §1114 because it is not the "registrant" of the trademark at issue, the mark ONE DROP DOES IT®, Reg. No. 1198986, issued on June 22, 1982 for the goods "hot sauce and pepper sauce" in Class 30. However, because the Defendants' argument is unsupported by the law or the facts of this case, it should be rejected.

Exclusive distributors of trademarked products, like the Plaintiff in this case, have long been held to have standing to sue for infringements in §1114 actions. *See G. H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d 499 (2d Cir.), *cert. denied*, 323 U.S. 715, 65 S. Ct. 41, 89 L. Ed. 575 (1944); *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 159

5

(1st Cir. 1977); *Browne-Vintners Co., Inc. v. National Distillers and Chemical Corp.*, 151 F. Supp. 595 (S.D.N.Y.1957).  *See also,* 15 U.S.C. § 1127 (which provides that the terms "applicant" and "registrant" for purposes of §1114 embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant.)

Courts have been reluctant to deprive a truly interested, but non-registrant, party the right to bring an action for trademark infringement especially where it has spent substantial time and effort developing its market position. *See Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F. Supp. 1240, 1245 (D. N.J. 1991). In fact, this court recently recognized a non-registrant's rights to bring a trademark infringement action in *Trump Plaza of Palm Beaches Condominium Ass'n, Inc. v. Rosenthal*, 2009 U.S.Dist LEXIS 54450 (S.D. Fla. June 24, 2009).

In *Trump*, Judge Hurley wrote that "an express licensee… has the right and duty to safeguard its interest in the marks and to protect its reputation and goodwill. It also has a direct interest in ensuring that these marks are not used to mislead…" *Id.* at *18. In finding that the plaintiff had standing to bring Lanham Act claims, the Court also considered the plaintiff's proximity to the defendant's harmful conduct and reasoned that "with the exception of [the registrant], no entity other than [the plaintiff] possesses sufficient self interest to bring suit to vindicate the public interest at issue in this case…this too counsels in favor of a finding of prudential standing." *Id.* at *21.

Plaintiff sufficiently alleged its exclusive distributorship as well as its interest, namely the substantial time and effort spent in developing its goodwill and reputation associated with the trademarks in Haiti. Specifically, in Plaintiff's Amended Complaint at:

> ¶ 16: In consideration for its work in developing the formula and its agreement to distribute Original Louisiana Hot Sauce™ in Haiti, Bruce Foods appointed GLOBAL its exclusive distributor and agent for Haiti.

> ¶17: GLOBAL has continued as exclusive distributor of Original Louisiana Hot Sauce™ in Haiti without interruption to the present.
>
> ¶18: Since it began exclusively distributing Original Louisiana Hot Sauce™ in Haiti, GLOBAL has grown sales of the specially formulated Bruce Foods product an average of 61% year over year from 1999 through 2008.
>
> ¶35, 52, 70, 79: Since 1999, GLOBAL, as the Bruce Foods exclusive distributor and agent in Haiti of The Original Louisiana Hot Sauce™™ brand, has used the registered mark ONE DROP DOES IT® to designate its specially formulated hot sauce sold in the Haitian market.

*See* Amended Complaint [D.E. 3].

Moreover, that Plaintiff is the exclusive licensee, agent, and authorized distributor of Bruce Foods' Original Louisiana Hot Sauce in Haiti is uncontested. *See* Declaration of Peter Wilby. [D.E. 26-1]. Bruce Foods specifically appointed Plaintiff to the territory in 1999 and contracted to "not knowingly sell to any other account for the territory of Haiti." *Id.*

Plaintiff has established its rights and exclusive interests in the trademark at issue, and Plaintiff has the requisite standing to maintain its Lanham Act claims. Thus, this Court should dismiss the Defendants' argument on this issue, find that this element favors Plaintiff's likelihood of success on the merits, and issue the preliminary injunction.

### III. PLAINTIFF IS SUFFERING IRREPARABLE HARM BECAUSE THE GOODS BEING SOLD BY DEFENDANTS ARE NOT "GENUINE"

The Defendants argue that they could not have violated the Lanham Act because the American Hot Sauce was "genuine" American Hot Sauce, produced by Bruce Foods in the same factory in which the Haitian Hot Sauce is produced. This argument has been summarily dismissed by the Eleventh Circuit, where as is the case here, neither the manufacturer nor the Plaintiff checked the goods for quality control.

In *Babbit,* the defendant argued that there was no violation of the Lanham Act because the articles that were alleged to be counterfeit were actually genuine goods, produced in the same

7

factory as the approved goods. *Babbit*, 38 F.3d at 1180. The Court dismissed that argument outright ruling that "identical goods sold in an unauthorized manner are not necessarily genuine for purposes of the Lanham Act." *Id. citing Hunting World, Inc. v. Reboans, Inc.*, 1992 U.S. Dist. LEXIS 17880 *6 (N.D. Cal. 1992) (where no evidence that the manufacturer inspected or approved the goods at issue, the goods were held to be not genuine.); *see also El Greco Leather Products Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2nd Cir. 1986)(where it was held that even if the goods were originally ordered by the trademark owner, if the goods are not inspected by the trademark owner to insure quality, they are not genuine.); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991) (where the use of Shell's trademark by a bulk oil wholesaler violated the Lanham Act because "a product in not truly 'genuine' unless it is manufactured and distributed under quality control established under the manufacturer." *Id.* at 107. ); *see also IBP, Inc. v. Hady Enterprises, Inc.*, 267 F. Supp. 2d 1148, FN 29 (N.D. Fla. 2002).

Based on the controlling case law, the Defendants' argument regarding the "genuineness" of the hot sauce that they sold in Haiti should similarly be dismissed since neither Bruce Foods nor Plaintiff were given the opportunity to control the quality of the hot sauce to ensure that it met the requirements of the destination. *See IBP,* 267 F. Supp. 2d 1148 (where plaintiff sold defendant beef for Russia and defendant falsely repacked it and sent it to Egypt where it did not comply with regulations, resulting in an importation ban on plaintiff, court found that a likelihood of confusion was created.)

### IV. PLAINTIFF'S IRREPARABLE HARM HAS NOT BEEN REBUTTED

Defendants completely ignored and failed to rebut Plaintiff's proffered evidence, including the Declaration of Marc Hechema, which details Plaintiff's damages, the harm done to Plaintiff by Defendants' actions, and the continuing harm that is resulting. The type of

irreparable harm being suffered by Plaintiff, where Defendants are selling genuine product manufactured by the trademark owner, is recognized by the law as sufficient to warrant a preliminary injunction. *Bourjois Co. v. Katzel*, 260 U.S. 689, 67 L. Ed. 464, 43 S. Ct. 244 (1923). Accordingly, this Court should find that Plaintiff has shown irreparable harm and issue the requested preliminary injunction.

## V. THE BALANCE OF HARDSHIPS WEIGHS IN PLAINTIFF'S FAVOR

Plaintiff presented evidence on the record that its reputation and goodwill in Haiti for providing Haitian Hot Sauce has been tarnished and risks being forever destroyed if an injunction is not issued. Defendants failed to present a shred of evidence on the record that they will suffer any harm at all if this injunction is granted. Where the Plaintiff's reputation is at risk and there is no evidence establishing the specific harm the preliminary injunction may cause to the Defendants, courts have issued preliminary injunctions. *Miranda v. Guerrero*, 2009 U.S. Dist. LEXIS 40898 (S.D. Fla. May 5, 2009).

## VI. AN INJUNCTION WOULD NOT DISSERVE THE PUBLIC INTEREST

While issuing an injunction may disserve the Defendants' pecuniary interests, it would not disserve the public's interest. Here, the public is disserved by the Defendants' creation of confusion and dissatisfaction in the marketplace. This factor too supports the granting of Plaintiff's motion for a preliminary injunction. *Id.*

WHEREFORE, Plaintiff, GLOBAL TRADING & BEVERAGE, INC., a Florida corporation, for the foregoing reasons hereby requests that this Court enter an Order granting its Motion for Preliminary Injunction [D.E. 9], and grant any further relief the Court deems just and proper.

Dated: November 23, 2009.

Respectfully submitted,
ARNSTEIN & LEHR LLP

                Attorney for Plaintiff
515 North Flagler Drive
Northbridge Centre – 6th Floor
West Palm Beach, FL 33401
561/833-9800 (ofc.)
561/655-5551 (fax)

By:/s/ Misha J. Kerr
    Misha J. Kerr
    Florida Bar No. 396520
    mjkerr@arnstein.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23 day of November, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                    Respectfully submitted,
                                    ARNSTEIN & LEHR LLP
                                    Attorney for Plaintiff
                                    515 North Flagler Drive
                                    Northbridge Centre – 6th Floor
                                    West Palm Beach, FL 33401
                                    561/833-9800 (ofc.)
                                    561/655-5551 (fax)

                              By:/s/ Misha J. Kerr
                                  Misha J. Kerr
                                  Florida Bar No. 396520
                                  mjkerr@arnstein.com

## SERVICE LIST
**GLOBAL TRADING & BEVERAGE, INC., a Florida corporation, Plaintiff, v. VINCENT & SONS ENTERPRISES, INC., a Florida corporation, and STANLEY VINCENT, individually, Defendants.**
**Case No.: 09-22770-CIV-LENARD/TURNOFF**
**United States District Court, Southern District of Florida**

Paul Kunz, Esq.
Florida Bar No.: 0159492
paul@bandervisa.com
Bander & Associates, P.A.
444 Brickell Avenue, Suite 300
Miami, Florida 33131
Telephone: 305-358-5800
Facsimile: 305-374-6593
(Counsel for Defendants)

8776468.1